# EXHIBIT A

302630-000

Lease No. 26380  **RENEWED**
Classification No. **VICTORY STGK**

# This Lease,

made this 9th day of January, 19 62, by and

16-247-31

between  Vern Stansberry and Bessie L. Stansberry, his wife

of  Silver Hill,  Wetzel  County,  West Virginia,
parties of the first part, hereinafter called Lessor, and

THE MANUFACTURERS LIGHT AND HEAT COMPANY, a PENNSYLVANIA
corporation, having an office at 800 Union Trust Building, Pittsburgh 19, Pennsylvania, hereinafter called Lessee.

## Witnesseth:

1. LEASING CLAUSE: The Lessor in consideration of One Dollar ($1.00) paid by the Lessee, the receipt of which is hereby acknowledged, does hereby grant, demise and lease unto the Lessee all the oil and gas, in and underlying all that certain parcel of land situate in Center District, Wetzel Township, County, and State of West Virginia as hereinafter described, with the exclusive right in the Lessee to enter upon said land to explore and drill for, produce and market all such oil and gas thereunder, to utilize such land and the underlying strata or sands, including the oil and gas formations, for injecting, storing and withdrawing gas of any kind, regardless of the source thereof, and for protecting the gas stored therein as well as under adjoining and neighboring lands, said parcel being bounded and described as follows:

On the North by lands now or formerly of  H.R. Stansberry and Fred Adams

On the East by lands now or formerly of  Bessie L. Stansberry

On the South by lands now or formerly of  Alton and Carrie Miller (formerly Rosie Miller)

On the West by lands now or formerly of  Clarence Hanlan and C.W. Yoater

Containing  60  acres, more or less, and being the same property secured from

Pearl Stansberry Estate by Heirship and H.R. Stansberry by deed in 1956

No new well to be drilled, however, within two hundred feet of the dwelling house or barn now on the premises without the consent of Lessor.

174

The Lessor further grants Lessee during the term of this lease the exclusive right to enter upon the above described land to drill, maintain and operate new wells and to recondition, reopen, operate and maintain all existing and abandoned wells located thereon for the production of oil and gas and for the storage of gas, by injecting, storing and withdrawing the same by pumping or otherwise through such wells or other wells located on adjoining or neighboring lands in the same vicinity; the rights-of-way and servitudes on, over, and through such tract for pipelines, drips, tanks, meters and regulators, together with the structures to house the same; the right to use oil, gas and water from said land free of cost to the Lessee for all such purposes; the right of ingress and egress over such tract for exercising any of the aforesaid rights, and all other rights and privileges necessary, incident to, or convenient for the operation of the above described tract, alone and conjointly with other lands for the production and transportation of oil and gas; and for the injection, storage and withdrawal of gas, with the right of removing either during or after the term hereof all machinery, pipe lines and other equipment placed on said land by the Lessee, including the right to draw and remove casing. The Lessee will pay Lessor for any damages caused to growing crops, trees and fences on the demised premises caused by Lessee's operations hereunder.

2. TERMS: The parties hereto agree that this lease shall remain in force for the term of ten (10) years from February 8, 1962, and as long thereafter as the above described land or any portion thereof is operated by the Lessee, in search for or in production of oil or gas or as long as such land is utilized by Lessee alone or conjointly with neighboring lands for either the storage of gas by injection, storage and removal of gas through well or wells operated on either the land herein demised or other adjoining or neighboring lands comprising a part of the same gas storage field, or for the protection of any gas stored in such storage field. The parties hereto agree that the Lessee shall be the sole judge as to whether such land is being used for any of the aforesaid gas storage purposes, including protection of stored gas, and Lessee's determination thereof shall be final and conclusive.

3. PAYMENT TO LESSOR: A. Royalties—The Lessee covenants and agrees in consideration of the premises: (a) to deliver to the credit of the Lessor free of cost, in the pipeline to which Lessee may connect its wells, a royalty of the equal one-eighth (⅛) part of all oil oil produced and saved from the above described land; and (b) to pay Lessor an annual production or storage well royalty of Three Hundred Dollars ($300.00) per year for each well drilled, reconditioned or reopened upon said premises and thereafter operated by Lessee to produce gas in paying quantities as a gas production well or utilized by Lessee for a gas storage well, as hereinbefore provided, such annual gas production or storage royalty to be paid Lessor quarterly in advance, beginning as of the date of such utilization and continuing thereafter until any such well is either plugged or abandoned or this lease terminated.

B. Rentals—The Lessee covenants and agrees to pay, and the Lessor covenants and agrees to accept an annual acreage rental of Sixty and no/100 Dollars ($60.00), payable quarterly in advance, beginning February 8, 19 62, until a well is completed and operated by Lessee on the above described

ENTERED LAND
ACCT. DEPT.
KCM  JAN 26 1962

land for either the production of gas or oil or storage of gas as hereinbefore provided, or this lease surrendered; any rental paid for time beyond the date of utilization of such gas well for either the production or storage of gas shall be credited to the first royalty due upon the same. It is agreed that the said Lessee shall be the sole judge as to whether to drill or not drill on said land; and the consideration and rentals paid and agreed to be paid hereunder constitute adequate compensation for such privilege. In the event that Lessee is not paying royalty upon any other well on the leased premises at the time any new or existing well is abandoned for any reason before being utilized by the Lessee for any of the purposes named herein or in the event the Lessee should later abandon and cease to use all the wells previously utilized by Lessee on the property for any of the aforesaid purposes, Lessee may continue to hold all its production and storage rights granted hereunder by continuing either to make the said acreage rental payments as provided herein or by resuming the payment of such acreage rental payments on this lease in lieu of such royalty payment within three (3) months from the time Lessee has ceased to operate the last well on this lease for any of the aforesaid gas production or storage purposes.

    C.  Manner of Payment—Lessee shall make all payments due hereunder either (a) direct to the Lessor by check made payable to

Vern Stansberry                                        at Silver Hill, West Virginia                                or

(b) if the Lessor consists of two (2) or more persons, by checks made payable to _____

at _____ who is hereby appointed Lessor's agent to receive, receipt and disburse

such payments, or (c) deposited to the credit of Lessor, or the credit of Lessor's said agent, in the _____

_____ bank

of _____, which bank is hereby authorized to receive and credit such payments.

    No default shall be declared against the Lessee by the Lessor for failure to make any payment or perform any conditions provided for herein unless the Lessee shall refuse or neglect to pay or perform the same within thirty days after Lessee has received written notice by registered mail from the Lessor of its intention to declare such default.

    4.  FREE GAS:  If gas is either being produced, marketed from or is available in sufficient quantity from any well or wells located on the said premises, the Lessor excepts and reserves from the premises herein demised, gas in a total amount not to exceed 150,000 cubic feet per year free of cost, for heat and light in one dwelling house on the premises, which amount of gas Lessor may receive by laying the necessary lines and making connections at Lessor's cost at such point on the demised premises as may be designated by the Lessee, provided said gas is used with economical appliances and is measured by meter furnished by Lessee as in the case of other consumers. The regulation of such gas will be by regulators furnished by Lessor placed at the tap on the well or other point of connection, with said gas to be used at Lessor's own risk and Lessee not to be in any way liable for any interruption or insufficient supply of such gas for said domestic use caused by pumping stations, breakage of lines or otherwise, and nothing herein shall prevent the Lessee from abandoning any well or wells or pipe lines and removing the pipe therefrom at any time. If more than _____ 000 cubic feet per year is used, the excess shall be paid for at the rate charged by the Lessee to domestic consumers; and in case of default in payment for gas used in excess of said _____ 000 cubic feet, Lessee is hereby authorized to deduct the amount thereof from any royalty or other payments due under the terms of this lease. The Lessee shall have the right to utilize and use free of cost, for power, on this and adjoining premises, any waste or casinghead gas produced on the premises.

    5.  OUTSTANDING INTERESTS:  This lease shall extend to and bind any leasehold right, interest or estate of the Lessor in the oil and gas rights and gas storage rights on the above described lands and the oil and gas storage strata underlying the same, now held or that may hereafter be acquired by Lessor; and in case of notice of any adverse claim to any such leasehold right, interest or estate or fractional part thereof in the above described premises, Lessee may withhold payments of acreage rentals or royalties due under the terms of this lease until the ownership of the same are determined by compromise or by final decree of a court of competent jurisdiction. Should it be determined that Lessor does not have all such exclusive leasehold rights, title and interest as are necessary for Lessee to carry on the production and gas storage operations herein described, there shall be refunded by the Lessor such part of all payments made by the Lessee hereunder as shall be proportionate to such outstanding interests and payments thereafter shall be reduced in the same proportion in order that rents and royalties paid by Lessee for the right to carry on such operations may be made to the parties legally entitled to receive the same.

    6.  ASSIGNMENT:  The entire interest or estate of either party hereto or any part thereof may be assigned; and in the event this lease or any part is assigned by Lessee, the assignee of such lease or part thereof shall thereafter be solely liable for all payments to be made to Lessor and other obligations as provided hereunder on that portion of the lease so assigned; and in the event such assignee shall default in the proportional share of payments to be made in any portion so assigned, such default shall not operate to defeat or affect the rights of the Lessee on any portion of the lease still retained by Lessee. No change of ownership in the land or in the rentals or royalties shall be binding on the Lessee until after Lessee has been furnished with a certified or sworn copy of any deed or other document showing such change in ownership.

    7.  WARRANTY:  The Lessor hereby generally warrants and agrees to defend the title to the leasehold oil and gas and the leasehold gas storage rights herein demised unto Lessee against the lawful claims and demands of all persons whomsoever, and that Lessee shall have the exclusive, free and quiet possession of such premises for the purposes and during the term herein set forth. Lessor further agrees that Lessee may at its option pay and discharge any taxes, mortgages or other liens existing, levied or assessed on or against such land; and if Lessee exercises such option, it shall be subrogated to the rights of any holder or holders thereof and may reimburse itself by applying to the discharge of any such mortgage, tax or other lien, any royalty or rentals accruing hereunder.

    8.  IMPLIED COVENANTS:  It is agreed that this lease shall not be forfeited or cancelled by the Lessor for the Lessee's failure to perform in whole or in part any of its implied covenants, conditions or stipulations until it shall have been first judicially determined that such failure exists and after such final determination Lessee is given a reasonable time therefrom to comply with any such covenants, conditions or stipulations.

    All express or implied covenants of this lease shall be subject to all Federal and State laws, executive orders, rules or regulations, and this lease shall not be terminated, in whole or in part, nor Lessee held liable for damages for failure to comply therewith, if compliance is prevented by, or if such failure is the result of any such law, order, rule or regulation.

175

9. SURRENDER: Lessee may at any time upon the payment of One Dollar ($1.00) and all royalties and rentals then due hereunder, surrender this lease as to all or any part of the land covered by the same to the Lessor, or if more than one Lessor, to any one of them, their agent, heirs or assigns, by delivery of a duly executed surrender thereof in person or by mail addressed to the post office of such person, and thereupon Lessee shall be released and discharged from all payments, obligations, covenants and conditions herein contained, whereupon this lease shall be null and void as to that part of the acreage so surrendered. In the event that a portion only of the land covered by said lease is so surrendered, the acreage rental payments provided in Section 5 shall thereafter be reduced in the proportion that the acreage so surrendered bears to the total acreage. Lessee agrees that the recordation of an instrument of surrender in the proper county and the mailing in the post office of a check payable as above provided for said last mentioned sum and all amounts then due hereunder shall operate as a complete legal surrender of this lease or a part thereof so surrendered.

10. ENTIRE CONTRACT: It is agreed that the entire agreement between the Lessor and Lessee is embodied herein, and that no verbal warranties, representations or promises have been made or relied upon by the Lessor or Lessee supplementing, modifying or as an inducement to this agreement.

11. HEIRS AND ASSIGNS: All the terms, conditions and covenants between the parties hereto shall extend to the heirs, personal representatives, successors and assigns of the respective parties.

IN WITNESS WHEREOF, the parties to this agreement have hereunto set their hands and seals the day and year first above written.

WITNESS:

_____ A. Cluck   Vern Stansberry_____ (SEAL)
                 Bessie L. Stansberry (SEAL)
                 _____ (SEAL)
                 _____ (SEAL)
                 _____ (SEAL)
                 _____ (SEAL)
                 _____ (SEAL)
                 _____ (SEAL)
                 _____ (SEAL)

THE MANUFACTURERS LIGHT AND HEAT CO.

Attest: _____
         Assistant Secretary

By: _____
         Vice President

Approved by _____
Approved by _____
Entered Land Dept. _____

170

STATE OF WEST VIRGINIA,
COUNTY OF _Wetzel_  } TO-WIT:

I, _Asa M. Mason_, Notary Public of said County, do certify that _Vern Stansberry_ & _Bessie L. Stansberry_ whose name _s_ is/are signed to the writing above (or hereto annexed), bearing date the _9_ day of _January_, 19_62_, has this day acknowledged the same before me, in my said county.

Given under my hand, this _9_ day of _January_, 19_62_.

My Commission Expires:
_May 6- 1962_

_Asa M. Mason_
Notary Public

COMMONWEALTH OF PENNSYLVANIA } ss.

STATE OF WEST VIRGINIA, COUNTY OF WETZEL, TO-WIT:
OFFICE OF THE CLERK OF THE COUNTY COURT OF WETZEL COUNTY

The foregoing paper writing was this day _February 14_, 19_62_, at _9:34 A.M._ presented for record in my office, and thereupon, together with the certificate thereto annexed, is admitted to record.

Teste: _Pearl Ice_  Clerk
County Court of Wetzel County

My Commission Expires:

STATE OF _PENNSYLVANIA_ } TO WIT
COUNTY OF ALLEGHENY

I, _Walter A. Perrin_, a Notary Public in and for said County and State, do certify that _G. E. Wilson_ who signed the writing above (or hereto annexed), bearing date the _9th_ day of _January_ 19_62_, for The Manufacturers Light and Heat Company a corporation, has this day in my said county, before me, acknowledged the said writing to be the act and deed of said corporation.

Given under my hand this _23rd_ day of _January_, 19_62_.

My Commission Expires:
WALTER A. PERRIN, Notary Public
Pittsburgh, Allegheny Co., Pa.
My Commission Expires
February 3, 1965

_Walter A. Perrin_
Notary Public

OIL AND GAS LEASE

FROM
Vern Stansberry, et ux
P.O. Address Oliver Hall
West Virginia
TO
THE MANUFACTURERS LIGHT & HEAT CO.
Dated January 9, 19 62
LOCATION
Goshen District
Wetzel County
West Virginia
Style of Record
Received for Record
Recorded
Recorder
LAND DEPARTMENT
600 Union Trust Building
Pittsburgh, Pennsylvania

RENEWED